'FILED
SUPERIOR COURT
OF GUAM

2026 JUL 10 PM 3:46

CLERK OF COURT

By:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| JP CAPITAL GUAM, LLC and CHING-JU WU, | **CIVIL CASE NO. CV0727-25** |
| Plaintiffs, | |
| vs. | **DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND TO STRIKE AMENDED COMPLAINT** |
| CHIEH-YU PAI, SCOTT A. CLARK, LAKESHORE GUAM LLC, HHW GUAM, LLC, and WAN-TANG LIU, | |
| Defendants. | |

Defendants Chieh-Yu Pai, Scott A. Clark, and Lakeshore Guam, LLC move to dismiss Plaintiffs JP Capital Guam, LLC and Ching-Ju Wu's first cause of action, to strike Plaintiffs' jury demand as to that cause of action, and to strike Exhibits A, D, and E from the Amended Complaint. Defs.' Mot. at 1–2 (Mar. 27, 2026). After reviewing the record and the filings related to this Motion, the Court DENIES the Motion, on the terms explained below.

## I.   BACKGROUND AND PROCEDURE

Wu and Pai entered into a Share Purchase Agreement on February 22, 2023. Am. Compl. ¶ 11 (Mar. 10, 2026). Under the Agreement, Pai agreed to sell all of his membership interest in JP Capital to Wu for $4,000,000. *Id.* at ¶ 12. At the time, JP owned 22 condominium units in Ladera Towers, and Plaintiffs allege that JP later acquired additional units and ultimately owned 45. *Id.* at ¶¶ 10, 33, Ex. A.

The Agreement also gave Pai continuing rights. He would serve as JP's exclusive sales agent, and Wu would appoint him as manager. Am. Compl., Ex. A art. 5. If he sold a unit for at

ORIGINAL

least $250,000, Wu would receive 75% of the net proceeds, and Pai would keep the rest. *Id.* at Ex. A art. 5. Pai also retained a repurchase right for his JP interest within two years of closing. *Id.* at Ex. A. art. 4.

Two days later, on February 24, 2023, Wu, Pai, and Clark signed additional documents, including a Second Amendment to the Operating Agreement and an Assignment and Assumption of Membership Interest. *Id.* at ¶ 16. Wu alleges those documents transferred JP's membership interests to her. *Id.* at ¶ 22. But the assignment itself states that Wu assigned her 99% Class A interest to Pai and her 1% Class B interest to Clark, with no future condition attached. *Id.* at Ex. C.

Also on February 24, 2023, Wu signed a Written Consent of the Members and Managers of JP. She alleges she kept the original and would deliver it only after Pai paid the repurchase price. *Id.* at ¶¶ 25–26. She further alleges that Pai and Clark told her the consent would not be used until Pai repurchased the rights under the agreement. *Id.* at ¶ 28. According to the Complaint, they intended to use the consent to defraud her and seize control of JP. *Id.* at ¶ 30.

Plaintiffs next allege that on March 3, 2023, Wu sent $4,000,000 to Pai's bank account. *Id.* at ¶ 31. On March 30, 2023, Wu and Pai signed a Residential Purchase Agreement under which JP paid $7,715,000 to buy 23 additional units in Ladera from LGI Pacific Guam, Inc., which the Complaint says Pai owns and Clark manages. *Id.* at ¶¶ 33–34. On April 6, 2023, Wu and Pai signed a Supplemental Agreement that allegedly removed the repurchase provisions and made later-acquired real estate not subject to the original repurchase right. *Id.* at ¶ 36. Wu alleges she agreed to lend Pai $7,715,000 in exchange for that consent. *Id.* at ¶ 39.

On February 5, 2025, Clark had a Manager's Certificate of the Beneficial Owners of JP notarized; attached to it was a copy of, but not the original, Written Consent that Wu signed. Am.

ORIGINAL

Compl. ¶¶ 40–41. On February 10, 2025, Wu allegedly discovered unauthorized withdrawal instructions of $2,205,000 and $15,000 from JP's Bank of Hawaii account. *Id.* at ¶ 46. She alleges that Clark and Pai made the requests, that the bank never confirmed them with her, that Attorney Jacques Bronze wrote to the title companies asserting Clark controlled JP, and that Bronze later convinced the bank to treat Clark as having access to JP's account. *Id.* at ¶¶ 44, 47–48, 50. Wu alleges those events froze JP's account. *Id.* at ¶ 51.

Litigation followed soon after. Plaintiffs allege that Bank of Hawaii filed an interpleader action, CV0763-25, against both Plaintiffs and Defendants. *Id.* at ¶ 52. They also note that Wu filed a separate breach-of-contract and fraud action against Clark and Pai on March 14, 2025, in CV0188-25. *Id.* at ¶¶ 55–56. Around the same time, she recorded *lis pendens* against JP's properties. *Id.* at ¶ 57. She further alleges that Clark and Pai worked with Taiwan real estate agents to sell JP property without disclosing the *lis pendens*, and that they tried to divert property and funds away from JP to prevent recovery. *Id.* at ¶¶ 58–60.

The Plaintiffs also allege a later ownership shift. In July 2025, Plaintiffs discovered that Defendants had filed a Written Consent with the Department of Revenue and Taxation on March 18, 2025. *Id.* at ¶ 61. That document allegedly transferred Pai's 99% interest in JP, and Clark's interest in JP, to Lakeshore and changed JP's manager to Lakeshore. *Id.* at ¶¶ 62–63. The Plaintiffs allege that Lakeshore had been owned by Clark and Pai, but Pai transferred his interest in Lakeshore to Pai's wife, Wan-Tang Liu, in December 2023. *Id.* at ¶¶ 64–66. Plaintiffs further allege that Lakeshore authorized JP's dissolution on the same day as the transfer. *Id.* at ¶¶ 67–68.

Finally, Plaintiffs allege that on July 29, 2025, Lakeshore executed a quitclaim deed transferring five Ladera Tower units (705, 802, 803, 804, and 905) to HHW Guam, LLC, a

ORIGINAL

Lakeshore entity. *Id.* at ¶ 125. Wu alleges that those units had been transferred to JP by LGI on or about April 23, 2023, and that 13 other units—504, 506, 609, 704, 705, 1002, 1005, 1006, 1008, 1010, 1011, 1106, and 1204—had been transferred away from JP to Lakeshore or to HHW; unit 705 appears in both groups. *Id.* at ¶¶ 78, 102, 125–126. She contends that these transfers removed assets from JP and caused her damages, including lost rent and additional litigation costs. *Id.* at ¶¶ 102–103, 120, 128.

## II.    DISCUSSION OF LAW

The Court first outlines the general legal principles attached to the issues raised in the parties' briefs.

A motion to dismiss under Guam Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim upon which relief can be granted. Dismissal is proper only where the nonmoving party appears unable to prove any facts supporting the claim that would entitle the party to relief. *Port Auth. of Guam v. Guam Indus. Servs., Inc.*, 2026 Guam 2 ¶ 27. The Court accepts well-pleaded facts as true, reads the pleading in the light most favorable to the nonmoving party, and resolves doubts in that party's favor. *Cruz v. Cruz*, 2023 Guam 20 ¶ 10. The Court need not accept bare legal conclusions, unsupported speculation, or allegations contradicted by the documents on which the pleading relies. *Lujan v. J.L.H. Tr.*, 2016 Guam 24 ¶ 10.

A fraudulent transfer claim under 20 GCA § 6101 voids any transfer made with intent to delay or defraud a creditor or other person of his demands. A claim under section 6101 is treated as a fraud claim and therefore must be pled with particularity under Rule 9(b). *Ukau v. Wang*, 2016 Guam 26 ¶¶ 37, 40–43. Rule 9(b) requires the plaintiff to state the circumstances surrounding the fraud with particularity, while intent may be averred generally. *Id.* at ¶ 43;



Guam R. Civ. P. 9(b). The pleading standard is commonly described as a "who, what, when, where, and how" requirement. *Ukau*, 2016 Guam 26 ¶ 47.

Under Rule 12(f), the Court may strike redundant, immaterial, impertinent, or scandalous matter. GRCP 12(f). Motions to strike are disfavored and should be granted only when the challenged matter clearly could have no possible bearing on the litigation. *Holmes v. Elec. Doc. Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013); *Serafin v. Realmark Holdings, LLC*, 2024 WL 150594, at *1 (N.D. Cal. Jan. 12, 2024); *Polaris PowerLED Techs., LLC v. Nintendo Co. Ltd.*, 623 F. Supp. 3d 1132, 1136 (W.D. Wash. 2022). Matter is immaterial if it has no essential or important relationship to the claim or defense, impertinent if it does not relate to the issues, and scandalous if it casts a cruelly derogatory light on a party. *Polaris PowerLED Techs.*, 623 F. Supp. 3d at 1135; *Marcus v. ABC Signature Studios, Inc.*, 279 F. Supp. 3d 1056, 1062 (C.D. Cal. Sept. 2017).

The right to a jury trial in a civil action is governed by 7 GCA § 22104, which preserves the right "[i]n all cases at law in which the demand . . . amounts to more than Twenty Dollars." 7 GCA § 22104; see GRCP 38(a), 39(a). Whether that right attaches turns on the nature of the claim and the relief sought, not on the historical label the claim once bore. *Torres v. Ulloa*, CV0574-25 (Dec. & Order (July 7, 2026)); *Ross v. Bernhard*, 396 U.S. 531, 538 n.10 (1970).

Finaly, 7 GCA § 7115 further provides that every written proceeding in a court of justice in Guam must be in English, unless the parties consent to the proceedings in Chamorro.

## A. Fraud Claims Pled with Particularity

Defendants first argue that Plaintiffs failed to plead fraudulent transfer with the particularity Rule 9(b) requires. *Ukau*, 2016 Guam 26 ¶¶ 37, 43, 47. Defendants identify three transactions they say the first cause of action targets: Pai's December 2023 transfer of his



Lakeshore interest to Liu; the March 18, 2025 transfer of Pai's and Clark's interests in JP to Lakeshore; and Lakeshore's same-day attempt to dissolve JP. Defs.' Mot. at 11–14. In their Opposition, Plaintiffs narrowed the claim. They disclaim any contention that the December 2023 Pai-to-Liu transfer was itself fraudulent, Pls.' Opp'n at 3, and they concede that "[t]he dissolution itself is not a fraudulent conveyance," id. at 4. The Court accepts those concessions and does not treat either the Pai-to-Liu transfer or the attempted dissolution as a fraudulent transfer for which relief is sought.

What remains is Plaintiffs' core theory: that after Plaintiffs disputed Defendants' authority over JP, Pai and Clark caused JP's membership interests and its Ladera properties to be moved through related entities—to Lakeshore, and then to HHW, both connected to Clark and Pai's wife—to place JP's assets beyond Plaintiffs' reach. Am. Compl. ¶¶ 61–68, 89–99, 125–136. As to those transfers, the Amended Complaint supplies the who (Pai, Clark, Lakeshore, and HHW), the what (the JP membership interests and identified Ladera units), the when (March 18 and July 29, 2025), and the where (a filing with the Department of Revenue and Taxation and a recorded quitclaim deed). That is enough to give Defendants notice of the particular conduct alleged.

The pleading is weaker on the "how." Defendants correctly observe that the Amended Complaint does not clearly allege how transferring Pai's and Clark's ownership interests—as opposed to JP's own property—hinders Plaintiffs' recovery, or that Pai or Clark were rendered insolvent. Defs.' Mot. at 12; Defs.' Reply at 3–4. Rule 9(b), however, requires particularity as to the circumstances of the fraud, not proof of the claim, and it permits intent to be averred generally. *Ukau*, 2016 Guam 26 ¶¶ 43, 47; GRCP 9(b). Read in the light most favorable to Plaintiffs, the allegation that Defendants moved JP's interests and property to insider entities in

ORIGINAL

order to defeat collection states the "how" with enough specificity to proceed, even if the theory may narrow as the case develops.

Defendants also argue that, because Plaintiffs allege Wu is JP's sole member, any transfer by Pai or Clark is a legal nullity that conveys nothing and so cannot be "set aside." Defs.' Mot. at 15–16 (citing *Morris v. Allen*, 17 Cal. App. 684, 691 (1911)); Defs.' Reply at 6. At the pleading stage, this does not warrant dismissal. Plaintiffs may plead in the alternative, and the premise that the transfers are void rather than merely voidable presents a merits question that cannot be resolved on a Rule 12(b)(6) motion that accepts the Amended Complaint's allegations as true. Whether the challenged instruments conveyed anything, and whether any conveyance is void or voidable, are matters for later adjudication.

For these reasons, the Court declines to dismiss the first cause of action for lack of particularity. The surviving fraudulent-transfer theory—directed at the March 18, 2025 transfer of JP interests to Lakeshore and the subsequent transfer of Ladera units to HHW—gives adequate notice under Rule 9(b) to proceed past Rule 12(b)(6).

### B. Joinder and the Pending Related Action

Defendants next argue that the first cause of action must be dismissed under Rule 18(b) because a fraudulent-conveyance claim is "ancillary to and dependent upon" an action establishing the underlying claim, and Plaintiffs placed that underlying claim in a separate case, CV0188-25. Defs.' Mot. at 14–15 (quoting *Armour & Co. v. B. F. Bailey, Inc.*, 132 F.2d 386, 387 (5th Cir. 1942)); Defs.' Reply at 5–6. The argument does not support dismissal. Rule 18(b) is permissive: a claim to set aside a fraudulent conveyance "may" be joined with a claim for money, and a plaintiff "may state a claim for money and a claim to have set aside a conveyance fraudulent as to that plaintiff, without first having obtained a judgment establishing the claim for

ORIGINAL

money." GRCP 18(b). The Rule enlarges what a plaintiff may join; it does not command dismissal because a related money claim is pending elsewhere.

Nor does the "demand" requirement of 20 GCA § 6101 compel dismissal at this stage. The statute voids transfers made to defraud "any creditor or other person of his demands," and Defendants acknowledge that § 6101 "is not strictly limited to only creditor/debtors." Defs.' Reply at 5 n.1. Whether Plaintiffs ultimately establish a cognizable demand, and whether this action should be coordinated with CV0188-25, are matters the Court can address through case management; they are not grounds to dismiss the claim as pleaded.

## C. Jury Demand

Defendants move to strike Plaintiffs' jury demand, arguing that a fraudulent-transfer action under 20 GCA § 6101 is equitable and carries no right to a jury. Guam law preserves the right to a jury "[i]n all cases at law in which the demand . . . amounts to more than Twenty Dollars." 7 GCA § 22104.[1] Plaintiffs seek recovery far exceeding that amount, so the question is whether they have brought an action "at law." The Court answers that question as it recently did in *Torres*, CV0574-25: by looking to the nature of the issues and the relief sought rather than to the historical label attached to the claim, under the three-part inquiry of *Ross v. Bernhard*, 396 U.S. 531, 538 n.10 (1970). Under that test, the court explores how the issue was treated before the merger of law and equity, the remedy sought, and the practical abilities of juries.

Like the shareholder derivative suit in *Torres*, a creditor's action to set aside a fraudulent conveyance historically sounded in equity. That history is not dispositive. Guam has abolished

---

[1] The right invoked here arises under section 22104 as the Seventh Amendment's jury guarantee has been held inapplicable to Guam. *Newby v. Gov't of Guam*, 2010 Guam 4.

ORIGINAL

the distinction between actions at law and suits in equity, leaving a single civil action. GRCP 2;

*Aflague v. Moylan ex rel. Est. of Moylan*, 2020 Guam 18 ¶ 22.

Next, the relief Plaintiffs seek is predominantly legal. The Amended Complaint does not

merely ask the Court to void the challenged conveyances; it seeks $462,300 in lost rental income

on the first cause of action, $33,000,000 in compensatory damages on the second, and

$1,500,000 in compensatory damages on the third, together with punitive damages on every

count. Am. Compl. ¶¶ 100–104, 120, 135–136; Prayer for Relief ¶¶ 1–3. "All money remedies . .

. are treated as legal, even if, historically, equity courts had jurisdiction over the particular kind

of claim." *Hyatt Bros., Inc. ex rel. Hyatt v. Hyatt*, 769 P.2d 329, 334 (Wyo. 1989). Punitive

damages, in particular, are a legal remedy unavailable in a pure suit in equity, and their presence

confirms the legal character of these claims.

Moreover, the disputed issues are of the kind juries routinely decide. Whether Pai and

Clark acted with intent to defraud, whether the transfers to Lakeshore, Wan-Tang Liu, and HHW

were bona fide or shams among related parties, and whether Defendants' representations were

false are quintessential questions of fact and intent. As in *Torres*, this case is not designated

complex, and its core question—whether insiders improperly diverted a company's property and

funds—lies well within the competence of a Guam jury.

Notably, Defendants' own authority indicates a fraudulence conveyance suit is equitable

"where *no* individual money damages are sought, and where the plaintiff seeks only to rescind

and to recover the fraudulently conveyed assets." *Moofly Prods., LLC v. Favila*, 46 Cal. App. 5th

1, 8 (2020) (emphasis added) (quoting *Bank of Am. v. Greenbach*, 98 Cal. App. 2d 220 (1950)).

That condition is not met here. Plaintiffs do not seek only rescission and recovery of the

conveyed assets; the first cause of action also seeks money damages, including $462,300 in lost

ORIGINAL

rental income together with attorney's fees and costs. Am. Compl. ¶¶ 100–103; Prayer for Relief ¶ 1; Pls.' Opp'n at 9. Because Plaintiffs seek legal money damages in addition to avoidance, this is not a claim for which, under Defendants' own authority, "a jury trial is not a matter of right." *Moofly*, 46 Cal. App. 5th at 8.

Because the first cause of action seeks legal money damages alongside equitable avoidance, it is an action "at law" for which section 22104 preserves the right to a jury. The motion to strike the jury demand is DENIED.

### D. Exhibits A, D, and E

Defendants move under Rule 12(f) to strike Exhibits A, D, and E, arguing they are untranslated, uncertified, or unsigned. Defs.' Mot. at 18–20. A motion to strike is a drastic and disfavored remedy, granted only where the challenged matter "clearly could have no possible bearing on the subject of the litigation." *Serafin*, 2024 WL 150594, at *1–2; *Polaris PowerLED Techs., LLC*, 623 F. Supp. 3d at 1135–36. The three exhibits present three different objections, and none supports striking material from the pleading.

Exhibit A of the Amended Complaint is the Share Purchase Agreement at the center of this dispute. Defendants contend the document's translation is inaccurate—specifically, that Wu's name was inserted where the original was blank—and uncertified. Defs.' Mot. at 18–19. That is a dispute about the accuracy and authentication of a translation, not a basis to strike the operative agreement as having no possible bearing on the case. Defendants identify no Guam statute or rule requiring a certified translation at the pleading stage, and any dispute over the translation's accuracy is a factual matter for later resolution. The Court declines to strike Exhibit A.



For Exhibit E, Defendants' objection is that it bears no signatures. Defs.' Mot. at 20. Whether an unsigned instrument proves what Plaintiffs say goes to its evidentiary weight and authenticity, not to whether it is immaterial or scandalous under Rule 12(f). The Court declines to strike Exhibit E.

Exhibit D stands differently. It consists of bank records filed in a foreign language with no English translation. Am. Compl. ¶ 31 & Ex. D. Guam law requires that "[e]very written proceeding in a court of justice of Guam . . . be in the English language," unless the parties consent to Chamorro. 7 GCA § 7115. An untranslated exhibit does not comply. The appropriate response, however, is not to strike the exhibit from the pleading under Rule 12(f), but to decline to consider it. The Court therefore will not consider Exhibit D as establishing any fact on this Motion.

Because none of the three exhibits meets the exacting standard for striking material under Rule 12(f), the motion to strike Exhibits A, D, and E is DENIED.

## III.    CONCLUSION AND ORDER

For the foregoing reasons, the Court ORDERS:

1. Defendants' Motion to Dismiss is DENIED.

2. Defendants' Motion to Strike Plaintiffs' jury demand is DENIED.

3. Defendants' Motion to Strike Exhibits A, D, and E is DENIED; however, that the Court will not consider the untranslated Exhibit D as establishing any fact.

**SO ORDERED** this 10 July 2026.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

ORIGINAL

Appearing Attorneys:
Joseph C. Razzano, Esq., Razzano Walsh & Torres, for Plaintiffs JP Capital Guam, LLC and
        Ching-Ju Wu
Louie J. Yanza, Esq., Law Office of Louie J. Yanza, for Defendant Scott A. Clark
Peter C. Perez, Esq., Law Office of Peter C. Perez, for Defendant Chieh-Yu Pai
Jon Visosky, Esq., Fowler & Visosky LLP, for Defendant Lakeshore Guam, LLC


ORIGINAL